## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DEC 19 2022 PM 1:22
FILED - USDC - BPT - CT

SHAUL MARSHALL PRAVER                                :

V.                                                   :          CIVIL ACTION NO.

STATE OF CONNECTICUT

DEPARTMENT OF CORRECTIONS                            :
REV. DR. CHARLES WILLIAMS, LINDELL BURNS

MICHAEL LATHROP; GUNNAR WEGLARZ ;                    :
MACKENZIE WHITLOCK; PAUL SENITA;

IVETTE DIAZ; NATHAN HEINS;                           :          JURY TRIAL
DEMANDED

ELULIA GARCIA; AND ANGEL QUIROS                      :          DECEMBER 20, 2022

### COMPLAINT

PLAINTIFF, brings this COMPLAINT against Defendants and alleges as follows:
Title VII of the Civil Rights Act of 1964 makes it illegal to discriminate against someone on the basis of their religion and to retaliate against a person because the person complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation. 42 U.S.C.§§1983 and 1985 likewise make that conduct illegal.

**JURISDICTION**

This Court has original jurisdiction of the federal claim contained in this Complaint pursuant to 28 USC 1331. Jurisdiction is proper in this court because: At all times material to this complaint, Plaintiff was a resident of Connecticut. and the defendants are all residents of Connecticut, are employees of the State of Connecticut, and all the incidents took place in Connecticut.

1. Defendants have discriminated against Plaintiff on the basis of his Jewish religion and retaliated against Plaintiff for complaining about same discrimination, for filing a charge of discrimination and for participating in an employment discrimination investigation; And Defendant retaliated against Plaintiff for submitting two complaints with the Connecticut Commission on Human Rights and Opportunities [CCHRO] both of which were found to have sufficient merit for the CCHRO to order mandatory mediation. Plaintiff has exhausted his administrative remedies with the CCHRO.

2. Defendanta violated Title VII of the Civil Right Act of 1964 not only on one or two occasions, but on numerous occasions through a variety of methods on a sustained basis over several years. Defendants intentionally committed these egregious and cruel acts against Plaintiff with the intent of forcing his resignation. Plaintiff suffered trauma, anxiety, and depression through the ordeal requiring psychotherapy. Because Plaintiff refused to resign, Defendants escalated their retaliation to threats of bodily harm upon Plaintiff; When Plaintiff once again refused to resign, Defendants actually attempted to inflict bodily harm upon Plaintiff and possibly murder him. Defendants intentionally created a scenario that appeared to Plaintiff as if Defendants arranged for his physical assault to occur through inmates in Defendants' care. Fortunately, Plaintiff succeeded in fleeing to an impenetrable room and ultimately succeeded in exiting the facility unscathed. The next day Plaintiff resigned.

3. However, these traumatic experiences damaged Plaintiff's physical health leaving him with a chronic cardiac condition for which he is being treated by a cardiac specialist. Plaintiff's medical records will show a steep decline in his cardiac health precisely during the years he endured these "pogroms" which Plaintiff will reveal in harrowing detail.

4. Prior to accepting the job offer from the Connecticut Department of Correction, Plaintiff had already enjoyed a successful 23 year career as a community Rabbi-Cantor. His last position was in Newtown Connecticut where he served for twelve years until he was called to serve as a first responder at the Sandy Hook Elementary School in December 2012. This experience exposed Plaintiff to the important role of chaplains helping people in times of crisis. Plaintiff accepted the position as Chaplain-Rabbi for the Connecticut Department of Correction with the intention of reducing violence in the community. During his tenure with the department, Plaintiff earned his doctorate in prison ministry with Hartford Seminary in 2019 and his BCC chaplain certification with The Association of Professional Chaplains [APC] widely regarded as the gold standard for professional chaplains, in 2022. Plaintiff became, if not the most qualified chaplain in Department, certainly among the most qualified. Plaintiff had approximately seven years of experience when he was overlooked for a supervisory position. Whereas, Defendants chose to appoint chaplains with little to no clinical and/or academic training in corrections, to same supervisory positions. Plaintiff's supervisor Deacon Jose Robles, had not earned a single unit of clinical pastoral education or earned an advanced degree of any kind, at the time Defendants appointed him to be Plaintiff's supervisor. Defendants' criminal antisemitic actions damaged Plaintiff's reputation and ability to work in his field in Connecticut and possibly other states as well.

5. The progression of Defendants' crimes against Plaintiff will now be presented in the sequence in which they occurred with sufficient detail and material evidence to demonstrate to the court that these things occurred as Plaintiff alleged.

6. My name is Chaplain Rabbi Shaul Marshall Praver. My status also includes being a national Board-Certified Chaplain with the Professional Association of Chaplains, a Rabbi with the Rabbinical Assembly, and a Doctor of Prison Ministry from Hartford Seminary.

7. The State of Connecticut and Department of Correction employs fifteen (15) or more employees in Connecticut.

8. I am a Jewish male. I was subjected to Defendants' antisemitic and discriminatory verbal, written, administrative and threatening physical assaults, in private and in public since at least 2017 and formal complaints beginning on October 4, 2019 ultimately reporting these assaults and hostilities to the Connecticut Commission on Human Rights and Opportunities on October 8, 2022. I have been subjected to unlawful discrimination and retaliation from the above-mentioned parties working in combination. The timeline demonstrates that these unlawful events occurred with planning and intent. I am a member of a protected class on account of my Jewish identity, and because I previously filed two complaints concerning Respondents' unlawful actions against me and Jewish inmates in my care.

9. On or about October 4, 2013, Plaintiff began working for Defendant the State of Connecticut and Department of Correction as a "Chaplain Rabbi." Plaintiff alternated my ministry services between six of Respondent the State of Connecticut and Department of Correction locations each week. My primary base is currently Defendant's Cheshire Correctional Institute, in Cheshire, Connecticut. My job performance always has been deemed good or excellent by my supervisors.

10. On April 23, 2020, Defendant the State of Connecticut and Department of Correction transferred my primary payroll facility from Bridgeport Correctional Center, where Plaintiff had been located since 2013, to Cheshire Correctional Institute. This changed my direct supervisor from Rev. Dr. Michael Christie to Respondent Deacon Robles. From 2014 to 2020, I worked with Rev. Dr. Michael Christie. Rev.Christie and I participated in Clinical Pastoral Education together at Norwalk hospital and like me, Rev. Christie is a life-long learner devoted to constantly sharpening his clinical skills. In contrast, Respondent Deacon Robles of Cheshire CI, to whom I've been reporting since 2020, has few clinical skills. Deacon Robles has been rude, abrasive, and often hostile to me. Deacon Robles has joined Defendant Rev. Williams in his hostilities against me as evidenced by verifiably false and inflammatory written reports about me.

11. Unfortunately, Defendant Deacon Robles was my supervisor and had been aiding and abetting Respondent Rev. Williams in hostile and discriminatory actions including those that were antisemitic. Deacon Robles acted against me in this unprofessional manner

independent of Rev. Williams as well. In fact, Defendant Williams gave me a direct order to work under Defendant Robles with the intention of harassing and tormenting me as will be demonstrated herein. That is why Defendant Williams insists on keeping me under Defendant Deacon Robles' supervision. The arrangement was promised to be temporary due to Covid-19.

12. On or about October 8, 2020, Plaintiff filed a complaint with the Commission (CCHRO) against the Defendants alleging unlawful discrimination. And Plaintiff filed another complaint regarding retaliation for filing the first complaint on February 18, 2022. The complaints numbers were (#2120109) is pending before the Commission.

13. The Respondents both individually and jointly have committed the following acts of harassment and retaliation against me because I am Jewish, and I previously filed a formal complaint against Defendant the State of Connecticut and Department of Correction for the same illegal behavior:

   a. On May 23, 2021, Respondent Rev. Williams harassed me by ordering me to move the State vehicle given to me for my use parked at Bridgeport CC ten minutes from my home in Fairfield, to Cheshire, CI, located one hour from my home. Cheshire is not on the way to my other facilities on the I95 Interstate corridor.

   b. This made my use of the state vehicle impractical, necessitating me to use my personal vehicle. If I were to use the state vehicle, it would add many unnecessary hours on the road materially interfering with my family life. Defendant Rev. Williams' insistence that the state vehicle be placed an hour from my home is retaliatory. Defendant the State of Connecticut and Department of Correction also refuses to pay the standard reimbursements for the use of my personal vehicle, insisting that the department gave me a state vehicle, and nonsensically asserts that the location of the van saves me time on the road. Notwithstanding my conference with Commissioner Quiros on November 23, 2021, and Respondent DA Garcia on December 13, 2021, the location of the state vehicle and my primary facility are still Cheshire, CI. I wrote to Respondent DA Garcia several times since our December meeting but received no response regarding this and all other issues on the timeline which I presented to her and Commissioner Quiros with the exception of allowing my program "Gates of Understanding" to continue. However, Defendants later disrupted that program by transferring the majority of the students to other facilities.

   c. On July 21, 2021, Defendant Rev. Williams harassed me by denying my application to start a program at the York Correctional Institute in Niantic Connecticut, entitled "Gates of Understanding" which I had submitted several times in previous years, all of which were blocked. After several complaints to Defendant Williams concerning discrimination Williams relented and approved my application twice, only to later rescind each approval. Finally, Defendant Rev. Williams approved my application again with a tentative start date of November 18, 2021, but then that was rescinded once again. Respondent Rev. Williams' pattern of approving and rescinding his approval, does not comport with a normal process and is arbitrary and capricious, driven by his desire to discriminate and harass me. Since no other denominational chaplains running programs experienced the same treatment, it is clear that Defendant Rev. Williams is retaliating against me on account of my Jewish identity and because I reported him for the same behavior in the past. The approval of this program was then cleared by Defendant Garcia, two chains of command above Rev. Williams, after my meeting with her in December. This was the only issue for which I received relief which was only temporary.

   d. Graduates of "Gates of Understanding" rarely if at all return to prison. Deputy Warden David Snyder of Garner CI knows about the quality of the program and was allowing it to continue in spite of Respondent Rev. Williams. Deputy Warden Katherine Iozzia of York also allowed the program to go forward and tried to navigate around Defendant Williams who proved to be very dedicated in blocking my program. But, even with that, I was still unable to run "Gates of Understanding" at York because of a subsequent incident that occurred shortly after the program was scheduled to move forward.

e. On August 2, 2021, at around 7:30 a.m., Defendant CO Michael Lathrop of York's women's prison in Niantic Connecticut committed an act of violence. The unit where the incident took place is called Industries, and the women residents are there to participate in therapeutic programs to help them recover from past traumas, addiction, and self-harm. That morning CO Lathrop entered the Industries housing unit wielding a baseball bat. He forcefully struck the air vents 33 times leaving permanent damage, while repeatedly yelling at the top of his lungs, "It's time to wake up all you bitches and whores!" The assault was recorded by the facilities' video camera and investigator Captain Julian Russell assured me that the video has been preserved into evidence.

f. Later that day, Respondent CO Lathrop refused to send a Jewish inmate to our weekly Jewish service. When I went to Industries to sort out the matter, CO Lathrop advised me that I was neither welcome at his unit nor did I have any right to ask about the Jewish inmate in his unit. Even though the incident occurred 6 months ago, no disciplinary actions have been taken regarding Respondent CO Lathrop's violent assault or his flagrant violation against the Jewish inmate's first amendment right to worship. I have been barred from the facility by the Deputy Warden Iozzia for my own physical safety, pending the completion of the investigation because additional retaliation and violent threats made against me by Defendants Captains Ivette Diaz and Paul Senita. Captain Diaz explicitly stated that her actions against me were because of the report I wrote about Respondent CO Lathrop's violent assaults on the inmates in his care.

g. On or about August 4, 2021, and continuing thereafter, Defendant Rev. Williams began harassing and retaliating against me for other reasons. He said I must stop advocating for Jewish inmates through what I write in e-mails to him, the lawyers, and the kitchen supervisors, because an inmate could see those e-mails by filing a freedom of information application. The matter was about four observant Jewish inmates who maintain kosher standards beyond what the facilities can currently accommodate. The food products themselves are kosher, but we do not have supervision of the food process to the standard that is acceptable to very observant Jews. Defendant Williams, Chaplain Ostrozynski, Chaplain Wright, and I met last summer to discuss how we could meet these needs in accordance with RLUIPA law. We discussed allowing these inmates to purchase their own kosher food just like other inmates purchase non-kosher food on commissary through a process Defendant Rev. Williams had created. When Rev. Williams said in an e-mail to the legal department and kitchen supervisors that we never discussed it, and he would not implement it, I sent the notes of our five hour meeting and I asked him: "If we do not provide kosher food to the standard of these very observant Jews and we do not allow them to purchase their own kosher food, how are we not violating their first amendment rights to practice their faith under RLUIPA? Defendant Rev. Williams chastised me in this instance for rendering a legal decision which was beyond the parameters of my position as the Rabbi, notwithstanding that he appointed me as the kosher inspector and Kosher authority in the facilities I serve. In that role I have written several affidavits in lawsuits supporting the state that are in the public record. In this case, these handful of observant Jewish inmates were not demanding that the DOC must provide kosher meals to their standards; they are only asking for permission to purchase shelf stable kosher meals with their own money. Defendant Rev. Williams characterized my question as advocating for the inmates which was then equated with the serious charge of undo familiarity. Respondent Rev. Williams wanted me to join him in his practice of wearing down the inmates through a process of writing back and forth and never granting their requests. Holidays came and went for years, and regardless of how early and how nicely the observant Jews submitted their requests for kosher food on shabbat and holidays, they were generally denied, and on the rare occasion that these items were approved, the items never arrived on time. Whereas, while serving nearly half the facilities in the state, I wanted to streamline the process and be true to the federal RLUIPA laws. Defendant Williams, however, wanted me to join ranks with him by engaging in his toxic practice of giving inmates the run around and further

punishing them by denying their requests to observe Judaism and its kosher dietary code to their standards. Moreover, Defendant Williams wanted to reprimand and "criminalize" my actions.

h. On Monday, August 2, 2021, Defendant C/O Lindell Burns of Cheshire who was provided a desk in the chaplain's office, harassed me in an extremely ghoulish manner by reporting to the inmates at Respondent's Cheshire Correctional Institute that Jewish services were cancelled because I had died.  I initially became aware of this rumor from the inmates in my group the following week, Monday, August 9, 2021, and this was corroborated by inmates for weeks as I made my pastoral tours throughout the facility. Defendant Robles, my direct supervisor, did not correct the record for the inmates and initially advised me that he knew nothing about it. But, Defendant Robles did know about it, because he preapproved my request to take a sick family day [SFAM] on August 2, 2021 and received my telephone call that same morning reminding the facility of my SFAM leave.  Defendant C/O Burns also knew. Defendant Robles did not write to me or call my home to check if I was alive or dead because he knew I was alive. This incident was one more planned antisemitic assault against me. The intention was to intimidate me and induce me to resign.

i. Respondent Robles further harassed me after I complained about the incident, which I considered to be extremely hostile and disturbing. Whereas Respondent Robles at first denied even knowing about the rumor, subsequently admitted to knowing about it when he realized that Protestant Chaplain Eugene Schemko had heard about in the presence of Defendant Robles also hearing about it. Defendant Robles then chastised me for voicing my concerns and stated that the incident was not serious, I should forget about it, and get back to work. He conditioned our discussion about the incident on my agreeing not to file an incident report in the facility. I agreed to that because it was the facilities' own staff who were responsible and were covering for each other.  That is why I filed the complaint directly with Commissioner Angel.  Robles also advised me that in his previous job he experienced much worse because "they" loosened the brakes on his car and directly endangered his life.   He advised that since his situation was much worse, I should just get over it. Defendant Robles also reprimanded me for complaining about it in the first place saying, "Before I act, I think about what I am going to say three times." When I asked about the matter itself, he advised that "all inmates are liars," and asked me who I thought would be believed, the inmates or the staff?" Defendant Robles and Defendant C/O Burns didn't deny that this false rumor of my death was spread, but they advised of real politic, "all inmates are liars… who do you think they will believe inmates or staff."

j. On August 18, 2021, Defendants Williams and Robles harassed me by denying my request to provide me with an alternative work schedule for the month of September 2021, and then Defendant Associate Chaplain Aaron Athey the Associate Chaplain at Corrigan CI, the facility I serve on Tuesdays, alleged I did not show up for the alternate schedule that Defendant Robles never approved. Defendant Williams granted the same request for a similarly situated colleague on the same days. Athey joined briefly with the other parties harassing me at Corrigan on August 30, 2021.

k. On August 30, 2021, Defendants Williams and Robles harassed me by ordering me to attend a meeting at Corrigan CI for the purpose of counseling me about advocating for observant Jewish inmates and their kosher dietary needs. However, in our summer meeting we already had agreed in principle, to allow the handful of observant Jewish inmates to purchase Kosher food to their standard through Director Williams' office. During the August 30, 2021, meeting, I was further counseled for questioning if it was legal for the department not to provide and not allow observant Jewish inmates to purchase Kosher food, which was the same question I raised at that meeting. After our summer meeting in July2021, Defendant Williams agreed we should apply ourselves and push this solution forward. He said, "I don't care if you provide them with the order forms, let's get this thing done." When I made efforts to do that, Defendant Williams pretended in the presence of the legal department, Defendants Wardens and

Deputy Wardens, to know nothing about it.  As such, the summer meeting in July 2012 had nothing to do with meeting inmate needs or adhering to Federal law, but it was one big, convoluted way of getting me to give inmates order forms which Director Williams would then use as a weapon to try and get me fired. But I didn't give the inmates order forms.

l. On September 2, 2021, Defendant the State of Connecticut and Department of Correction agents, officers harassed and intimidated me while I attempted to conduct Rosh Hashana services for female inmates at the York facility.  During the services, officers Gunnar Weglarz and Mackenzie Whitlock inexcusably interrupted the religious service numerous times. The Defendant's officers Weglarz and Whitlocks' repeated interruptions left little time for the scheduled service to take place.

m. On September 2, 2021, Defendants Captains Ivette Diaz and Paul Senita entered the same room where I had just dismissed the inmates from Rosh Hashana services to level two charges against me. The first charge was for interfering with the count to which I responded that I did not interfere with the count, but that officers Weglarz and Whitlock had interfered with the service.  The second charge was for speaking unprofessionally to one of their officers. When I asked them what they were referring to, Defendant Diaz said it referred to my reporting Respondent CO Lathrop with respect to violent conduct discussed above. I deny that I spoke unprofessionally to any officers at any time. The officers' false accusations against me are continuing forms of harassment and retaliation because I filed the first complaint against Defendant Williams, and for my reporting Defendant C/O Lathrop's acts of violence against an entire unit of women at York Correctional Institute Ultimately I was barred from the facility and Defendant CO Lathrop was literally awarded with the "Officer of the Year" award.

n. On September 20, 2021, I requested that Defendant Robles allow me to bring in specific ritual items necessary for me to conduct Sukkot services for inmates at Respondent's Cheshire Correctional Institute. Robles harassed, intimidated, and retaliated against me by denying my request. Defendant Robles wrote that the Catholic Palm Branches for Palm Sunday observances were approved to be brought into the facility, but the Lulav Palm Branch for Sukkot observances were not approved to be brought into the facility. Defendant Deacon Robles chastised me in writing for doing "whatever I wanted to do" with these "other" "unapproved" ritual items. Respondent Robles' denial contrasted with Defendant the State of Connecticut and Department of Correction allowing me to bring in the same items for Sukkot services in all previous years. On the same day that I pointed this out to Defendant Robles, he relented and allowed me to bring in the Lulav Palm Branch.  Prior to this though, Defendant Robles had participated with Defendant Williams in authorizing in writing, an observant Jewish inmate at Cheshire to purchase the same Lulav Palm Branch. Yet, at the same time maintained that I, the staff Rabbi was not approved to bring in the Lulav Palm Branch to conduct services for the inmates.

o. On or about October 4, 2021, and continuing thereafter, Defendant Williams harassed me concerning a failed kitchen inspection at the Cheshire Correctional Institute because the kitchen was not serving a brand of Jell-O that was acceptable to Jewish and Islamic Kosher/Halal laws as agreed. Instead of containing a non-animal enzyme, it contained an enzyme derived from pork. Director Williams asked me to inspect the Cheshire kitchen and then harassed me when I did my job.  Defendant Williams refused to discuss the matter on the phone and ordered me to state the problem in writing.

p. On or about October 18, 2021, Defendant Williams again harassed and publicly chastised me for not being more careful about what I put into e-mails. Whereas kitchen supervisor John Deluca said, "Good Catch, thank you Rabbi."

q. On or about November 16, 2021, Defendant Williams harassed and discriminated against my Jewish identity and every Jewish inmate in my care by mandating in writing that the observance of Hanukah would be limited to individual worship and silent prayer. Defendant Williams' directive contrasts with the collective out

loud services that every other religious denomination was permitted to do at the time and at the same facilities. Defendant's directive was e-mailed to every facility, top brass, and chaplains. His message of dividing and silencing Jews on Hanukah was broadcast statewide without one dissenting voice other than my own. He repeated this same discriminatory policy on February 8, 2021, in his directives regarding Passover.

14. On information and belief, Defendants' harassing, and retaliatory actions, as stated above, are the direct result of my complaints concerning unlawful discrimination by filing the first complaint against Defendant the State of Connecticut and Department of Correction, on October 8, 2020.

15. On information and belief, Defendants' harassing, and retaliatory action(s), as stated above, are because they are anti-Semites, and I am a Jewish person wanting to bring my ministry into the Correctional space, and as such, Defendants are discriminating against me on multiple fronts to limit my type of ministry and Jewish persona from advancing or even being in the department.

16. On information and belief, Defendant does not harass, intimidate, and retaliate against non-basis employees of other religious denominations who do not oppose unlawful discrimination.

I, Chaplain Rabbi Dr. Shaul Praver (D-MIN, BCC), being duly sworn, on oath, states that he is the Plaintiff herein; that he has read the foregoing suite and knows the content thereof; that the same is true of his own knowledge, except as to the matter herein stated on information and belief and that as to these matters he believes the same to be true.

Shaul Marshall Praver

217 Greenbriar Rd.
Fairfield, CT. 06824
203-209-4662

2